IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

COLUMBIA DIVISION

| | |
|---|---|
| DORIS F. JOHNSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 3:06-3485-MJP-BM |
| v. ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| SOUTH CAROLINA ) | |
| DEPARTMENT OF EDUCATION, ) | |
| ) | |
| ) | |
| Defendant. ) | |
| _____) | |

This action has been filed by the Plaintiff pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et. seq.. Plaintiff, formerly an employee of the Defendant South Carolina Department of Education, alleges she was discriminated against by the Defendant because of her race (African-American).

The Defendant filed a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on December 12, 2007. After having been granted an extension of time to respond, the Plaintiff filed a memorandum in opposition to the Defendant's motion on February 1, 2008, following which the Defendant filed a reply memorandum on February 11, 2008. Defendant's motion is now before the Court for disposition.[1]

---

[1] This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(g), D.S.C. The Defendant has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.

1



**Background and Evidence**[2]

Plaintiff initially worked for the Defendant from June 2000 to November 2003. Plaintiff's Deposition, pp. 17-19 (Defendant's Exhibit 1). Plaintiff worked in the Defendant's Office of Transportation as a computer consultant. Plaintiff's Deposition, pp. 18-24 (Defendant's Exhibit 1). Plaintiff's direct supervisor during this period of time was Doug Hamrick, from whom she consistently received positive performance evaluations. Plaintiff's Deposition, pp. 25-27 (Defendant's Exhibit 1); Plaintiff's Deposition, Exhibits 2 & 3 (Defendant's Exhibits 6 & 7). Plaintiff resigned her employment with the Defendant in November 2003 to accept a position with the Department of Health and Environmental Control. Plaintiff's Deposition, p. 19 (Defendant's Exhibit 1). Plaintiff subsequently left DHEC for a job at the USC Medical School. Plaintiff's Deposition, p. 20 (Plaintiff's Exhibit 1).

In August 2005, the Defendant posted an Announcement of Vacancy for an education associate position. Hamrick Deposition, Exhibit 6 (Defendant's Exhibit 13). This position involved working with, and providing technical assistance for, special needs school bus routing plans as well as handling related monitoring and compliance issued relating to these plans. Id. The vacancy was advertised from August 4, 2005 to August 18, 2005, and again from September 2, 2005 to September 12, 2005. Addison Deposition, pp. 10, 18-20; Addison Deposition, Exhibits 5 & 7 (Defendant's Exhibit 16 & 18); Hamrick Deposition, Exhibit 6 (Defendant's Exhibit 13). Plaintiff applied for the position. Plaintiff's Deposition, p. 45 (Defendant's Exhibit 1).

A total of twenty-one (21) applications for the position were received, which were

---

[2]The facts and evidence are considered and discussed hereinabove in the light most favorable to the Plaintiff, the party opposing summary judgment. Pittman v. Nelms, 87 F.3d 116, 118 (4th Cir. 1996).



then reviewed by the members of the interview team. Hamrick Affidavit, ¶ 5. The interview team consisted of Hamrick (team leader) along with John Dozier (African-American) and Tony Caulder (white). Hamrick Affidavit, ¶ 4 (Defendant's Exhibit 23); Dozier Affidavit, ¶¶ 2-3 (Defendant's Exhibit 25); Caulder Affidavit, ¶ 3 (Defendant's Exhibit 24). Six individuals were selected to be interviewed, a group which included three white males, two white females, and one African-American male. Hamrick Deposition, p. 67 (Defendant's Exhibit 2); Hamrick Deposition, Exhibit 10 (Defendant's Exhibit 15). Plaintiff was not among those selected for an interview. One of the white females, Stefanie Hamett, was ultimately selected for the position. Hamett Deposition, p. 49 (Plaintiff's Exhibit 4); Hamrick Deposition, Exhibit 9 (Defendant's Exhibit 14).[3] Plaintiff was later notified by letter dated January 4, 2006 that she had not received the position. Plaintiff's Deposition, p. 49 (Plaintiff's Exhibit); Plaintiff's Deposition, Exhibit 10 (Defendant's Exhibit 12).

Plaintiff thereafter filed an administrative charge of discrimination, and after receiving a notice of right to sue, she filed this lawsuit in United States District Court alleging unlawful race discrimination in her failure to receive this position.

**Discussion**

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of

---

[3] Defendant's evidence reflects that Hamett was actually the third choice for the position. The first two choices, Dennis Meyers (white male) and Garry Fast (white male) declined the position because it was only a temporary grant position. Hamrick Deposition, p. 79 (Defendant's Exhibit 2); Hamrick Affidavit, ¶ 8 (Defendant's Exhibit 23); Dozier Affidavit, ¶¶ 8-9 (Defendant's Exhibit 25); Caulder Affidavit, ¶ 5 (Defendant's Exhibit 24). See Hamrick Deposition, pp. 32-34 (Defendant's Exhibit 2).

3



law." Rule 56(c), Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing there is a genuine issue for trial." Rule 56(e), Fed.R.Civ.P.

Plaintiff's claim is for disparate treatment, based on her allegation that she was discriminated against on the basis of her race when she was not selected for the education associate position at issue. Disparate treatment cases under Title VII require proof of intentional discrimination, either by direct evidence or by the structured procedures set froth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981). Plaintiff has not offered any direct evidence of race discrimination in her failure to receive this position.[4] However, the absence of direct evidence of discrimination is not fatal to Plaintiff's claim, as direct proof of discrimination rarely exists in this type of case. In such a situation, indirect evidence of discrimination may be presented through the McDonnell Douglas framework.[5]

---

[4] Direct evidence of discrimination is evidence which, if believed, would prove the existence of a fact without any inferences or presumptions. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 548-549 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Black's Law Dictionary, 460 (6th Ed. 1990) (citing State v. McClure, 504 S.W.2d 664, 668 (Mo.Ct.App. 1974); see Williams v. General Motors Corp., 656 F.2d 120, 130 (5th Cir. 1981), cert. denied, 455 U.S. 943 (1982).

[5] In addition to a McDonnell Douglas analysis, consideration of Plaintiff's claim under the so-called "mixed-motive" analysis is also now allowed, even though Plaintiff has presented only circumstantial, or indirect, evidence of discrimination. Hill v. Lockheed Martin Logistics Mgt., Inc., 354 F.3d 277, 284-285 (4th Cir. 2004); see also Mereish v. Walker, 359 F.3d 330, 339-340 (4th Cir. 2004); Machinchick v. PB Power, Inc., 398 F.3d 345, 352 (5th Cir. 2005) [ADEA]. Previously, consideration of a claim under the mixed motive analysis was only proper in direct evidence cases. However, neither party has argued for consideration of Plaintiff's claim under a "mixed-motive" analysis. See Hopes v. Roche, No. 04-2963, 2005 WL 1812820 at * 6 n. 2 (D.Md. Aug. 2, 2005)
(continued...)

4



The United States Supreme Court articulated a three-part analysis for evaluating discrimination cases in McDonnell Douglas. First, Plaintiff must establish a prima facie case of discrimination. Once a prima facie case has been established, a rebuttable presumption is created that the employer unlawfully discriminated against the Plaintiff. Second, once this presumption has been established, the burden of production shifts to the employer to show a legitimate, non-discriminatory reason for its actions. Third, if the employer shows a legitimate, non-discriminatory reason for its actions, the burden is then on the Plaintiff to come forward with evidence that the employer's asserted reasons for its actions are a mere pretext for its true discriminatory motives, and that the actions of the employer were really based on Plaintiff's race. McDonnell Douglas Corp., 411 U.S. at 802-805; Texas Dep't of Community Affairs, 450 U.S. at 252-256; Conkwright v. Westinghouse Elec. Corp., 933 F.2d 231, 234-235 (4th Cir. 1991). Despite these shifting burdens of production, however, Plaintiff retains the ultimate burden of persuasion on the issue of discrimination throughout. Texas Dep't of Community Affairs, 450 U.S. at 252-253; see also St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

In order to establish her prima facie case of discrimination with regard to this claim, Plaintiff must show the following: 1) that she is a member of a protected class; 2) that she applied for the position; 3) that she was qualified for the position; and 4) that she was rejected for the position in favor of someone from outside of her protected class, or there is some other evidence giving rise

---

[5](...continued)
(citing Nagy v. Baltimore Life Ins. Co., 49 F.Supp.2d 822, 836 n. 13 (D.Md. 1999) [declining to engage in "mixed-motive" analysis where parties have not argued a mixed-motive theory.]); *cf.* Tomczyk v. Jacks & Jill Restaurant, LLC., 198 Fed.Appx. 804, 812 (11th Cir. 2006); Bloomer v. United Parcel Service, Inc., 94 Fed.Appx. 820, 826 (10th Cir. 2004); but see Magnusson v. The Hartford, 258 Fed.Appx. 444, 446 n. 3 (3rd Cir. 2007).



to an inference of unlawful discrimination. Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004); Taylor v. Virginia Union University, 193 F.3d 219, 230 (4th Cir. 1999); Williams v. Grimes Aerospace Co., 988 F.Supp. 925, 937 (D.S.C. 1997).[6] For purposes of summary judgment, the Defendant does not contest the establishment by the Plaintiff of her prima facie case. Therefore, the Court must turn to consideration of the remaining McDonnell Douglas factors.

The Defendant has presented evidence to show that the successful applicant (Hamett) had knowledge of routing as a result of dealing with service requests and break-downs in her previous position as Oconee County bus shop clerk, where she also assisted with routing evaluations for Oconee County as well as with the local district. Defendant's evidence also reflects that Hamett had a good working knowledge of the laws and regulations relevant to special needs routing and possessed experience developing bus routes, and that the interview team believed Hamett had valuable experience in the field of routing and transportation. See generally Hamrick Affidavit, ¶ 9 (Defendant's Exhibit 23); Dozier Affidavit, ¶ 10 (Defendant's Exhibit 25); Caulder Affidavit, ¶ 6 (Defendant's Exhibit 24); Hamett Deposition, pp. 38-39 (Defendant's Exhibit 4); Hamett Deposition, Exhibits 11 & 12 (Plaintiff's Exhibit 5). This evidence is sufficient for the Defendant to meet its burden of production to show a legitimate, non-discriminatory reason for its decision to hire Hamett for the position. EEOC v. Clay Printing Co., 955 F.2d 936, 941 (4th Cir. 1991) [The defendant's burden is only one of production, not of persuasion]. Therefore, in order to survive summary judgment, Plaintiff's evidence must be sufficient to create a genuine issue of fact as to whether the Defendant's proffered reasons are mere pretext.

---

[6]The exact standard to be used in establishing a prima facie case is flexible depending on the factual situation and the claim alleged. Ennis v. National Ass'n of Business and Educational Radio, Inc., 53 F.3d 55, 58(4th Cir. 1995).

6



In order to show pretext, Plaintiff must show that "but for" the Defendant's intent to discriminate against her because of her race, it would not have made the employment decision at issue. EEOC., 955 F.2d at 941; Conkwright, 933 F.2d at 234. "Direct or indirect evidence of discriminatory motive may do, but 'the evidence as a whole... must be sufficient for a reasonable fact-finder to infer that the employer's decision was motivated by [race animus].'" LeBlanc v. Great American Insurance Co., 6 F.3d 836, 843 (1st Cir. 1993)(citing Goldman v. First Nat'l Bank, 985 F.2d 1113, 1117 (1st Cir. 1993)(quoting Connell v. Bank of Boston, 924 F.2d 1169, 1172, n. 3 (1st Cir. 1991), cert. denied, 111 S.Ct. 2828 (1991)); Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141-143 (2000).    After careful review and consideration of the arguments and evidence presented, the undersigned finds that a sufficient issue of fact has been presented with respect to pretext to survive summary judgment.

When the new education associate position was advertised in August 2005, the summary of the position stated that the employee would be required to develop and review "local school district special needs school bus routing plans and provide[ ] technical assistance to local school district officials in the identification of special needs routing deficiencies, development of proposed special needs routes, and the monitoring of special needs routes." The employee would also be required to organize and conduct periodic compliance audits of the special needs routing system, make recommendations for approval of these routes and systems, participate in training sessions and deliver technical assistance, as well as perform periodic audits of special needs transportation reports. Plaintiff's Deposition, Exhibit 6 (Plaintiff's Exhibit 2). As previously noted, Defendant does not contest that Plaintiff was qualified for this position. Considered in the light most favorable to the Plaintiff, the evidence shows that Plaintiff had worked for the Defendant for three

7



years as a computer consultant, during which she served as the contact person for the Department's access routing program, including handling the installation of routing programs and generally assisting in handling "computer problems" involving this program. Plaintiff's Deposition, pp. 22-23, 34-37 (Defendant's Exhibit 1). This experience included not only working with the routing systems on the computer, but actually riding the routes; Id, pp. 43-44 (Plaintiff's Exhibit 1); see also Plaintiff's Deposition Exhibit 1 (Defendant's Exhibit 5); and Plaintiff consistently received performance ratings of "exceeds" for her work. Plaintiff's Deposition, Exhibits 2 & 3 (Defendant's Exhibits 6 & 7).

In addition to the evidence of Plaintiff's work experience, the record reflects that the *minimum* required qualifications for the position included a master's degree with four years of experience in education, management, or business; or a bachelor's degree with five years of experience in education, management, or business. Hamett did not have a bachelor's degree, one of the minimum qualifications required for the position. Hamett Deposition, p. 52 (Plaintiff's Exhibit 4).[7] By contrast, Plaintiff has *both* a bachelor's degree *and* a master's degree. Plaintiff's Deposition Exhibit 8 (Defendant's Exhibit 10). However, Hamett was selected for an interview, while Plaintiff was not.

The job posting also stated that it was preferred that the applicant have training and/or experience in school bus transportation and transportation services, routing, safety, or management experience with a government transportation system. Plaintiff had, of course, previously worked for the Defendant as the contact person for the Defendant's access routing program, a job in which she

---

[7]Hamett told the interview team that she planned to complete a degree program in May 2006. Hamett Deposition, p. 73 (Defendant's Exhibit 4).

8



had received excellent performance reviews. Hamett (whom Defendant acknowledges was the interview team's third choice for the position) was the bus shop clerk for Oconee County, where she was responsible for maintaining adequate parts and supply levels for county vehicles and assisted with the re-routing of vehicles. Prior to working in this position, Hamett had been a bus driver, terminal supervisor, and truck driver. Hamrick Affidavit, ¶ 9 (Defendant's Exhibit 23); Hamett Deposition, Exhibits 11 & 12 (Defendant's Exhibits 20 & 21). Hamrick attests that the interview team believed that Hamett had gained knowledge of routing as a result of dealing with service requests and breakdowns. Hamrick Affidavit, ¶ 9 (Defendant's Exhibit 23). See also Hamett Deposition, pp. 38-39 (Defendant's Exhibit 4); Dozier Affidavit, ¶ 10 (Defendant's Exhibit 25).

The interview team members (including the African-American member) all attest that they made the decision to hire Hamett for the position because her background and training were best suited for the position and special needs routing; Hamrick Affidavit, ¶ 15 (Defendant's Exhibit 23); Dozier Affidavit, ¶¶ 7 & 10 (Defendant's Exhibit 25); Caulder Affidavit, ¶¶ 6 & 8 (Defendant's Exhibit 24); and the Defendant correctly notes that "relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision". See Lamb v. The Boeing Co., 213 Fed.Appx. 175, 180 (4th Cir. Dec. 5, 2006). However, Plaintiff's work experience and qualifications in this area versus that of Hamett as established by the employment records in evidence, and the fact that Plaintiff had both a bachelor's and a master's degree while the successful white applicant did not even meet the minimum requirements for the position at the time she was selected, are sufficient to create a genuine issue of fact as to whether Plaintiff was more qualified for the position than Hamett. See Lowery v. Circuit City Stores, Inc., 158 F.3d 742, 760, 763 (4th Cir. 1998) [Plaintiff may succeed on a failure to hire claim where the evidence shows that



9

the plaintiff was more qualified for the position than the individual who actually received the position], rev'd on other grounds, 119 S.Ct. 2388 (1999), aff'd on reh'g, 206 F.3d 431 (4th Cir.   ), cert. denied, 121 S.Ct. 66 (2000).

Even so, the Defendant also argues that Plaintiff has presented no evidence of any statements indicating a racial bias or animus on the part of the decisionmakers in this case. Admittedly, discerning an employer's motives in a case like this is always difficult, as it is the rare employer who is so unwise as to make incriminating statements concerning its motivation so as to provide a plaintiff with concrete evidence to support their claim.   Indeed, this is one reason the law provides that evidence derived from circumstances and inferences may be used to support a finding of pretext. *Cf.* Everston v. State of NY Mort. Agency, No. 89-7474, 1992 WL 6190 at *7 (S.D.N.Y. Jan. 3, 1992) [[Plaintiff] need not come forward with a 'smoking gun' attesting to [Defendant's] discriminatory intent in order to avoid summary judgment....]. Here, Plaintiff has established a prima facie case of discrimination, and the evidence is sufficient to create a genuine issue of fact as to whether she was more qualified for the position than the successful applicant. Reeves, 530 U.S. at 141-143 [setting forth the general proposition that where a plaintiff presents a prima facie case together with sufficient evidence to conclude that the employer's asserted justification for the employment decision is false, a trier of fact can conclude that the employer unlawfully discriminated]; Magnusson, 258 Fed.Appx. at 446 [an employee can show pretext by "discrediting the [employer's] proffered reasons [for the employment decision], either circumstantially or directly..."]. The evidence also reflects that only one of the six individuals selected for an interview was African-American, and that of those six the interview team had to first approach, and be turned down by, two of the other white applicants before even offering the job to Hamett, while Plaintiff



(notwithstanding her excellent work record) was not even considered.

In sum, while there is certainly evidence in the file to support the Defendant's claim that it had a valid reason for the employment decision taken, considering the evidence in the light most favorable to the Plaintiff, as this Court is required to do on summary judgment, the undersigned does not find that "[n]o  reasonable trier of fact could conclude" that Hamett receiving this position was a result of a racial animus. Spratley v. Hampton City Fire Dept., 933 F.Supp. 535, 542 (E.D.Va. 1996), aff'd, 125 F.3d 848 (4th Cir. 1997);  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) [at summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor"]; see LeBlanc, 6 F.3d at 843 ["[I]ndirect evidence of discriminatory motive may do [as long as it is] sufficient for a reasonable factfinder to infer that the employer's decision...was motivated by [racial animus]"]; Muhammad v. Klotz, 36 F.Supp.2d 240, 243 (E.D.Pa. 1999) ["Thus, at the summary judgment stage the only inquiry is the threshold one of determining whether there is the need for a trial, that is, 'whether the evidence presents a sufficient disagreement to require submission to [the trier of fact] or whether it is so one-sided that one party must prevail as a matter of law'"], citing Anderson, 477 U.S. at 250-252; Reeves, 530 U.S. at 141-143. Therefore, Defendant's motion for summary judgment with respect to this claim should be denied.

## Conclusion

Based on the foregoing, it is recommended that the Defendant's motion for summary judgment be **denied**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina
June 30, 2008

11

